## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

RIXENE W. HICKS,

                Plaintiff,

          v.

JOSHUA GOTBAUM, Director,
Pension Benefit Guaranty Corporation

                Defendant.

Civil Action 07-1959  (RCL)

---

## MEMORANDUM OPINION

Rixene W. Hicks, an administrative specialist with the Pension Benefit Guaranty Corporation ("PBGC"), an agency of the United States government, brings this action against Joshua Gotbaum, the director of PBGC.  Hicks alleges that the agency discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a.[1]  Before the Court is PBGC's motion for summary judgment [Dkt. #38].  Upon consideration of the motion, the opposition and reply thereto, and the record of this case, the Court concludes that PBGC's motion must be granted.

### I. FACTUAL BACKGROUND

The events giving rise to this case began when Hicks, an African American female over the age of 40, was detailed to PBGC as a "collateral duty counsel" with PBGC's equal

---

[1]     Although Hicks's amended complaint does not explicitly assert a separate ADEA cause of action, Hicks avers that she has been discriminated against because of her age, which she states to be "over 40." Am. Compl. ¶ 26.  The ADEA prohibits age discrimination against individuals over the age of 40.  29 U.S.C. § 633a.  PBGC reads Hicks's complaint to include an ADEA claim, and the Court adopts this same reading.

employment office ("EEO office") in 2005.  Am. Compl. ¶ 4; Def.'s Mot. for Summ. J. ("Def.'s

Mot."), Ex. 6 (Decl. of Rixene Hicks, Oct. 31, 2008) ("Hicks Decl.") at 2.  In May 2006, Hicks

was selected for a position as a GS-9 Administrative Specialist in PBGC's EEO Office.  Hicks

Decl. at 2.

For Hicks's work during fiscal year 2006, Hicks's supervisor, Lori Bledsoe, awarded her

an "outstanding" rating.  Hicks Decl. at 2;  Def.'s Mot., Ex. 1 (Decl. of Lori Bledsoe, June 12,

2009) ("Bledsoe Decl.") at 2.  Bledsoe contends, however, that in the fiscal year beginning after

October 1, 2006, Hicks began to demonstrate performance problems.  Bledsoe Decl. at 3.

Specifically, Bledsoe avers that Hicks failed to provide updates to her supervisors regarding the

status of her pending work; failed to proofread budget reports, EEO counselor reports, and

meeting minutes prior to submitting them to her supervisors; and failed to timely pay PBGC

contractors for their services.  Bledsoe Decl., Attach. 2 (Memo from Lori Bledsoe to Rixene

Hicks, May 10, 2007) ("Bledsoe Memo").  On April 5, 2007, Bledsoe instructed PBGC's Human

Resources Department not to process Hicks' promotion to the GS-11 level.  Bledsoe Decl.,

Attach. 1 (email from Lori Bledsoe to Human Resources Department, Apr. 5, 2007).

Bledsoe and Hicks met on May 10, 2007 to discuss Hicks's performance.  Hicks Decl. at

2; Bledsoe Decl. at 3.  Hicks contends that this meeting marked the first time Bledsoe informed

her of any problems with her performance.  Hicks Decl. at 2.  Bledsoe maintains that she had

previously raised these performance issues with Hicks during "day to day discussions," although

she does not provide specific dates on which such discussions occurred.  Bledsoe Decl. at 3.

On May 30, 2007, Hicks filed a grievance against Bledsoe, as a result of learning that she

would not be promoted.  Am. Compl. ¶ 8;  Hicks Decl. at 2.  After the filing of the grievance,

Bledsoe and Hicks met again.  Am. Compl. ¶ 9.  Hicks contends that Bledsoe "demanded" that she sign a memorandum regarding a "counseling session that [Hicks] did not agree had taken place," and with which Hicks did not agree.  *Id.* ¶ 11.  Hicks further avers that Bledsoe denied her demands for a witness to be present, *id.* ¶ 12, and that when Hicks attempted to leave, Bledsoe "hollered" at her and physically blocked her exit, resulting in an injury to Hicks's rotator cuff.  *Id.* ¶¶ 12–14; Hicks Decl. at 5.

Subsequently, Hicks applied for workers' compensation benefits for the injury she suffered as a result of the meeting.  Hicks Decl. at 6.  Hicks contends that PBGC obstructed her efforts to receive compensation by refusing to process her claim.  Am. Compl. ¶ 34.  PBGC's records indicate that the agency took some initial action on November 7, 2007 and then resubmitted the claim to the Department of Labor on February 13, 2008.  Def.'s Mot., Ex. 12 (letter from Stephanie Holder, Nov. 6, 2007); Def.'s Mot., Ex. 14.[2]

Hicks was transferred from the EEO office to PBGC's Office of Chief Counsel ("OCC") in July 2007.  Def.'s Mot., Ex. 3 (Decl. of Betsy Masuoka, Oct. 10, 2008) ("Masuoka Decl.") at 1.  Several months later, she accepted an offer of permanent reassignment to OCC at the GS-9 level.  Def.'s Mot, Ex. 8 (Decl. of Ruben Moreno, Oct. 10, 2008) at 4; Matsuoka Decl. at 1–2.  This position came with the possibility of upward mobility to GS-11, Moreno Decl. at 4.  PBGC has on at least one occasion chosen not to promote her to this higher level, and at the time of the parties' most recent briefing in this case, Hicks remained at GS-9.

_____

[2]     In her declaration submitted in connection with her EEOC complaint, Hicks also complains that PBGC took almost a month to provide her with the necessary forms to apply for workers' compensation benefits in the first place.  Hicks Decl. at 6.  Hicks's filings in connection with this litigation, however, do not include any complaints about the alleged delay in receiving claim forms.  *See* Am. Compl.; Pl.'s Opp'n to Def.'s Mot. for Summ. J ("Pl.'s Opp'n").

Hicks filed a complaint in the Superior Court of the District of Columbia in October

2007.  *See* Notice of Removal of a Civil Action, at ¶ 2 [Dkt. # 1].  She also initiated contact with

the Equal Employment Opportunity Commission ("EEOC") on November 26, 2007 and filed a

formal complaint on July 16, 2008.  Def.'s Mot., Ex. 17 at 1–2.  PBGC removed the Superior

Court action to this Court in November 2007.  *See* Notice of Removal of a Civil Action, at ¶ 2.

In the case at bar, Hicks alleges that PBGC discriminated against her on the basis of her

race, sex, and age by failing to promote her to the GS-11 level.  She also alleges that, in

retaliation for filing a grievance against Bledsoe, Bledsoe denied Hicks promotions and "further

created a hostile work environment."  Am. Compl. ¶ 44.[3]  PBGC denies all of Hicks's allegations

and contends that it is entitled to summary judgment.

## II. LEGAL STANDARD

Summary judgment may be granted only where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002).  A material fact is

one that is capable of affecting the outcome of the litigation.  *Anderson v. Liberty Lobby*, 477

U.S. 242, 248 (1986).  A genuine issue exists where the "evidence is such that a reasonable jury

could return a verdict for the nonmoving party," as opposed to evidence that "is so one-sided that

one party must prevail as a matter of law."  *Id.* at 248.  A court considering a motion for

---

[3]     In listing the ways in which she allegedly faced retaliation, Hicks also states that she was "denied . . . annual appraisals."  Am. Compl. ¶ 44.  However, Hicks does not include any additional facts or arguments related to such denials.  This aspect of Hicks's case must therefore fail because parties must provide competent evidence to survive summary judgment, and reliance on allegations advanced in the pleadings does not suffice.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)

summary judgment must draw all "justifiable inferences" from the evidence in favor of the

nonmovant. *Id*. at 255.  But the nonmoving party's opposition must consist of more than mere

unsupported allegations or denials and must be supported by affidavits or other competent

evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P.

56(c); *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable" or "not significantly

probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249–50.  After addressing

whether PBGC's motion for summary judgment is premature, it applies the summary judgment

standard to PBGC's motion and the evidence that Hicks's proffers in opposition.

## III. ANALYSIS

### A.    PBGC's Motion for Summary Judgment is Not Premature

 PBGC maitains that summary judgment is appropriate at this time.  Hicks, however,

rejoins that she is entitled to discovery before summary judgment is granted.  PBGC has the

better argument.

In general, summary judgment in Title VII cases should be avoided where discovery has

not taken place.  *See, e.g.*, *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (citing

*Hackley v. Roudebush*, 520 F.2d 108, 149, 151 (D.C. Cir. 1975)).  Parties requesting discovery

are generally required to submit motions under Rule 56(d) of the Federal Rules of Civil

Procedure.  Rule 56(d) provides that a court may deny a motion for summary judgment, order

discovery, or "issue any other appropriate order" if the nonmoving party "shows by affidavit or

declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

FED. R. CIV. P. 56(d).[4]  The affidavit or declaration "cannot be a generalized, speculative request to conduct discovery but must demonstrate that further specified discovery will defeat a summary judgment motion, " *Estate of Parsons v. Palestinian Auth.*, 715 F. Supp. 2d 27, 35 (D.D.C. 2010) (quoting *Maduforo v. Urban Serv. Sys. Corp.*, 2009 WL 2378743, at *1 (D.D.C. July 31, 2009)), and "show what facts [the nonmoving party] intend[s] to discover that would create a triable issue and why he could not produce them in opposition to the motion." *Byrd v. EPA*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999).  Even in the absence of an affidavit, courts may nonetheless postpone summary judgment if additional filings in the case have "served as the functional equivalent of an affidavit" and informed the court that further discovery is needed.  *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988).  In this regard, "[c]onclusory allegations without any supporting facts are not sufficient to justify additional discovery." *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 502 F. Supp. 2d 103, 106 (D.D.C. 2007).  Summary judgment may therefore be appropriate where "plaintiffs' briefs fail to identify any facts essential to opposing [a] motion for [summary judgment] as to which discovery is needed." *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 91 (D.C. Cir. 2001).  Here, Hicks has failed to meet these requirements.  She has not submitted a Rule 56(d) motion or affidavit, nor has she specified facts that she seeks to discover or demonstrated why discovery might create triable issues of fact.  What is more, Hicks has failed to explain why she has been unable to produce necessary facts in opposing the summary judgment motion.  As such, her request for discovery must be denied.

---

[4]     Rule 56(d) was formerly codified as Rule 56(f).  The new codification was made "without substantial change." FED. R. CIV. P. 56(d) 2010 amend. cmt. (2010).

Hicks's reliance on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) is misplaced and unavailing.  She argues that the case stands for the proposition that a plaintiff need not plead facts establishing a *prima facie* case.  Although the *Swierkiewic* case does stand for that proposition, its holding is inapposite.  *Swierkiewic* addressed the proper standards for resolving motions to dismiss under Rule 12(b)(6).  It did not address the standard for evaluating a motion for summary judgment.  To the extent that Hicks cites *Swierkiewic* for the more general proposition that she is entitled to discovery, her argument is misguided.  In order to stave off summary judgment, a party must "provide sufficient particularity to justify [a] request for discovery."  *Brookens*, 616 F. Supp. 2d at 96.  It is not enough to make "conclusory assertions."  *Id.*  Because of Hicks's failure to provide a Rule 56(d) affidavit and because she has failed to identify what facts, if any, are necessary to discover, the Court concludes that it need not grant Hicks time to conduct discovery.  Thus, summary judgment is not premature, and the Court now examines whether summary judgment is appropriate for each of Hicks's claims.

**B.     Summary Judgment for Defendants is Appropriate as to Hicks's Non-Promotion Claims**

In the absence of direct evidence of discrimination, Title VII and ADEA claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), as simplified by *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, retaliation, or hostile work environment.  *McDonnell Douglas*, 411 U.S. at 802.  The employer can rebut this *prima facie* showing by presenting "some legitimate, nondiscriminatory reason" for the action in dispute.  *Id.*  The burden

then shifts back onto the plaintiff to demonstrate that the asserted reason is pretextual.  *Id.* at 805.

Where a defendant has moved for summary judgment, however, and "where an employee has suffered an adverse employment action and an employer has asserted a legitimate non-discriminatory reason for the decision," courts need not evaluate whether a plaintiff has satisfied the burden of establishing a *prima facie* case.  *Brady*, 520 F.3d at 494.  Instead, courts set aside the *McDonnell Douglas* framework and ask: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee . . . ?"  *Id.*[5] This simplified inquiry means that "a court only needs to determine whether there is enough evidence for a jury to find that the employer's legitimate non-discriminatory reason is pretextual."  *Fields v. Johanns*, 574 F. Supp. 2d 159, 162 (D.D.C. 2008).  The Court now applies this framework to Hicks's claims.

1.     **PBGC Has Asserted Legitimate and Nondiscriminatory Reasons for Not Promoting Hicks**

PBGC argues that Hicks's race, sex, and age discrimination claims must fail because the agency had a legitimate, non-discriminatory reason for not promoting Hicks on two challenged occasions:  while she worked in the EEO office and after she had been transferred to the Office of Chief Counsel ("OCC").  As its basis for the first non-promotion, the PBGC relies on principal factor: Hicks's performance deficiency.  As evidence of this reliance, PBGC points to a

---

[5]     While *Brady* involved a race discrimination claim, the D.C. Circuit also applies *Brady* to retaliation claims.  *See Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir 2009).  In addition, courts similarly apply *Brady*'s framework to ADEA claims.  *See, e.g., Lurie v. Mid-Atlantic Permanente Medical Group, P.C.*, 729 F. Supp. 2d 304, 316 n.2 (D.D.C. 2010) (noting that "this Court and the other courts of this district have regularly extended *Brady*'s methodology to claims under the ADEA").

June 6, 2007 memorandum from Bledsoe to Hicks counseling Hicks that she had frequently failed to complete assignments within deadlines.  Bledsoe Memo at 1.  The memorandum also states that Hicks did not pay an invoice for interpretive services on time and did not advise Bledsoe of the problem.  *Id.* at 2.  In addition, the memorandum cites Hicks's submission of a 2008–09 budget that was not realistic or accurate, as well as her numerous budget report proofreading mistakes, EEO counselor reports, and meeting minutes.  *Id.*[6]  For all of these reasons, PBGC argues, Hicks was not satisfactorily performing her job duties and, therefore, did not qualify for a GS-11 promotion.[7]  These arguments are well-taken; the Court finds PBGC has proffered evidence that its non-promotion of Hicks at the EEO Office was based on legitimate and nondiscriminatory reasons.

Turning to the second non-promotion at the OCC, the Court finds the agency also proffers a legitimate, non-discriminatory reason for this non-promotion decision as well: lack of

---

[6]     PBGC has submitted evidence that employees in career ladder positions are eligible, but not entitled, to promotions after 52 weeks of time in their grade position.  Def.'s Mot., Ex. 13 at 1 (Decl. of Arrie Etheridge, senior level director of human resources for PBGC, Nov. 21, 2008); *accord* Bledsoe Decl. at 2.  This evidence contradicts a statement that Hicks made in the declaration that she appears to have submitted in connection with the complaint she made at the EEOC level.  In that declaration, Hicks contends that when she accepted the Administrative Specialist position in the EEO, her supervisor, Lori Bledsoe, informed her that it was a career ladder position and that she would receive a promotion to the GS-11 level in May 2007.  Hicks Decl. at 2.  Hicks has not contended in this litigation, however, that she was ever promised a promotion.  *See* Am. Compl; Pl.'s Opp'n.

[7]     PBGC apparently intended to offer an "Exhibit 2" that would have demonstrated that Hicks's "second level supervisor," Stephanie Holder, believed Hicks did such a poor job in drafting the EEO office's budget that the office was six weeks late in submitting its budget.  *See* Def.'s Statement of Material facts ¶¶ 2, 15.  According to PBGC's summary of what this exhibit would show, Hicks also failed to outline a budget for the new year and, instead, prepared a draft that simply restated the prior year's budget.  *See* Def.'s Mem. at 6.  PBGC, however, never attached an Exhibit 2.  Therefore, the Court will not consider PBGC's description of what this evidence would have shown.

opportunity to observe Hicks's performance.  Hicks's administrative support specialist position in the OCC was designated as GS-9, with the potential for promotion.  Matsuoka Decl. at 1–3. PBGC has introduced evidence that Hicks's OCC supervisor, Betsy Matsuoka, was prepared to promote Hicks to GS-11 if she found Hicks's performance to be sufficient at the end of a six-month observational period.  *Id*. at 3.  Hicks was never promoted, however, because Matsuoka did not have six months to observe Hicks; although six months had passed since Hicks began working at OCC, Hicks had only been at work for approximately five and a half weeks.  *Id.* Hicks has asserted that her absences were due to health-related problems.  Hicks Decl. at 8 (stating that she was out of the office due to the injury Bledsoe allegedly inflicted).

### 2. Hicks Has Failed to Rebut PBGC's Asserted Reasons for Not Promoting Her

Because PBGC has proffered legitimate, non-discriminatory reasons for Hicks's non-promotion, the Court turns to the "central question" of whether Hicks has produced sufficient evidence such that a reasonable jury could infer that the non-promotions were the result of discrimination.  *Brady*, 520 F.3d at 494.  Hicks may defeat summary judgment by demonstrating that PBGC's proffered reasons were not the true reasons for her non-promotion, but instead amount to pretext for unlawful discrimination.  *Colbert v. Tapella*, 649 F.3d 756, 758–59 (D.C. Cir. 2011).  In her filings, Hicks adduces three types of evidence.  The Court addresses each category of evidence in turn and concludes that, because none demonstrate a genuine issue of material fact, PBGC is entitled to summary judgment.

### a. PBGC's Lack Performance Deficiency Documentation Does Not Constitute a Genuine Issue of Material Fact as to Discriminatory Motive

Hicks's first category of evidence can more precisely be considered the lack of evidence

related to her alleged deficiencies.  Hicks argues that, prior to filing a grievance against Bledsoe,

she was never apprised of alleged performance deficiencies "in writing."  Pl.'s Opp'n at 12.

This, however, is not sufficient to prove pretext.  The fact that Bledsoe never provided

documentation of Hicks's performance problems "in writing" does not, in and of itself, cast

doubt on Bledsoe's stated concerns about Hicks's performance.  It just means that Bledsoe did

not apprise Hicks of those concerns in writing.  *See Pollard v. Quest Diagnostics*, 610 F. Supp.

2d 1, 33 (D.D.C. 2009) (finding that a reasonable jury could not infer unlawful animus from the

fact that the employer did not document complaints about the plaintiff in writing).  Accordingly,

the Court finds that Hicks's proffered evidence "'requires too much speculation to create a

genuine issue of fact about [PBGC's] motives.'"  *Id.* (quoting *Carney v. Am. Univ.*, 151 F.3d

1090, 1094 (D.C. Cir. 1998)).[8]

> **b.**     **Hicks Has Failed to Show that PBGC's Stated Reasons for Not Promoting
> Her Were a Pretext for Impermissible Discrimination**

The second category of evidence that Hicks puts forward addresses her performance more

directly.  Specifically, she contends that she never had any performance problems and that PBGC

is incorrect to assert otherwise.  In support of this argument, Hicks offers evidence that the

problem with the invoices was not her fault.  In a letter setting forth PBGC's decision on the

grievance Hicks filed against Bledsoe, a PBGC official concluded that while Hicks "had the

responsibility for processing those [invoice] payments," she "took the necessary actions of

---

[8]     Relatedly, Hicks contends that she was never provided with performance objectives.  Am. Compl. ¶ 18.  This, too, is not enough to prove pretext for unlawful discrimination.  If true, it would mean only that she did not know how she would be evaluated.  *Perez v. Region 20 Educ. Serv. Center*, 307 F.3d 318, 325 (5th Cir. 2002) (failure of employer to set performance goals "may be a management lapse," but is not evidence of pretext).

informing [her] supervisor of issues concerning those invoices and that management intervention was necessary, but for reasons unknown . . . , was not taken." Pl.'s Opp'n, Ex. 4 at 1 (Letter from Stephen Barber, Chief Management Officer, to Rixene Hicks, undated). This evidence rebuts PBGC's contention that Hicks was deficient in the processing of the invoices. Nevertheless, Hicks cannot create a genuine issue for trial by demonstrating that only one of PBGC's reasons for her non-promotion was false; she can only create a genuine dispute if she can make this demonstration with respect to all of PBGC's reasons. *Kirk v. Small*, 2004 WL 1249294, at *1 (D.C. Cir. June 7, 2004) ("[T]hat some of employer's reasons for firing plaintiff were successfully challenged by plaintiff 'does not defeat summary judgment if at least one reason for each of the actions stands unquestioned.'") (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995)).

As additional proof that discrimination motivated PBGC's failure to promote her, Hicks points to the undisputed evidence that Hicks was hired into a permanent EEO position subsequent to being detailed to the EEO office and that she was given an "outstanding" rating for her performance in this position in 2006. But a strong performance in 2006 is not enough. Even if Hicks performed well in 2006, she has not contradicted the evidence that her supervisor had a basis for believing her performance lagged thereafter (except as to the processing of the invoices). Indeed, Bledsoe's declaration indicates that Hicks's performance became a concern in the 2007 fiscal year. Bledsoe Decl. at 3. An employer's description of an employee's performance as unsatisfactory will not be deemed pretextual just because the employee was a good performer at an earlier time. *See Bennett v. Solis*, 729 F.Supp.2d 54, 71–72 (D.D.C. 2010) (observing that "while plaintiff may have been a stellar employee during the years prior to 2004,

it is undisputed that his performance deteriorated and became unacceptable" and concluding that there was no basis for finding the employer's assertion of performance problems to be pretextual).

Thus, in asserting that her performance was not deficient, Hicks has provided evidence with respect to the processing of the invoices; she has not, however, put forward sufficient evidence to demonstrate that PBGC's other concerns about her performance were pretextual.  As such, she has not created a genuine issue for trial.  *Kirk*, 2004 WL 1249294, at *1.

> c.    **Hicks Has Not Demonstrated that PBGC's Allegedly Irregular Procedures Were Discriminatory**

The third type of evidence relates to the investigation of the incident in which Hicks alleges that Bledsoe "attack[ed]" her.  Pl.'s Opp'n at 11.  In particular, Hicks suggests that procedural irregularities plagued the investigation and that they are evidence of PBGC's illegal discrimination against her.  As support, Hicks notes that she was not allowed to have a representative attend a hearing regarding the investigation.  Pl.'s Opp'n, Ex. 9 (email from Ricardo Silva to Stuart Bernsen, June 18, 2007).  Hicks does not, however, proffer any evidence to suggest that employees are ordinarily entitled to have representatives at such hearings.  Hicks also puts forward evidence that the Federal Protective Service did not investigate the incident. Pl.'s Opp'n, Ex. 10 (letter from Rixene Hicks to Office of Inspector General, Apr. 11, 2008). Hicks suggests that the Federal Protective Service was "blocked" from doing so.  Pls.'s Opp'n at 11.  Again, however, Hicks fails to provide any support for the notion that the Federal Protective

Service's lack of investigation was a departure from normal procedures.[9]  She further suggests that PBGC "acted inappropriately in the handling of [her] complaints and failed to timely notify her of the results of said investigation."  Pl.'s Opp'n at 3.  To support this proposition, she cites an email she sent to a human resources manager stating that "[i]t has been a rather long time and I thought they would have finished the report by now[.]" Pl.'s Opp'n, Ex. 12 (email from Rixene Hicks to Ricardo Silva, Oct. 23, 2007) at 1.  Hicks's own characterization of the timeliness of the investigation, however, does not demonstrate that the investigation took an unduly long time.  *See Pollard*, 610 F. Supp. 2d at 33 (a plaintiff's "'unsupported, personal speculation about the motivations'" of her employer is not enough to show pretext) (quoting *Asghar v. Paulson*, 580 F. Supp. 2d 30, 37 n.15 (D.D.C. 2008))

Despite these attempts to raise the specter of irregular procedures, there is nothing in the record from which a reasonable jury could conclude that Hicks was treated differently from the way in which PBGC's policies and procedures would dictate she should have been treated.[10]

---

[9]    Hicks provides no indication of the relationship between the Federal Protective Service and PBGC.  Even assuming such a relationship exists, and PBGC directed the Federal Protective Service to not investigate, a failure to investigate, without more, would not indicate unlawful discrimination.  *See Rivera-Aponte v. Rest. Metropol #3, Inc.*, 338 F.3d 9, 11–12 (1st Cir. 2003) (holding that cursory nature of the employer's investigation did not raise the inference that the decision to terminate the employee was the result of discrimination).

[10]    The record also contains a fourth type of evidence—comparator evidence.  *See, e.g.*, *Hodczak v. Latrobe Specialty Steel Co.*, 2011 WL 5592881, at *3 (3d. Cir. Nov. 17, 2011) (" . . . a plaintiff alleging employment discrimination may establish pretext by showing 'that the employer treated other, similarly situated persons not of his protected class more favorably.'")(quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d. Cir. 1994)).  In her declaration that appears to have been submitted in connection with her EEOC case and that was filed as an exhibit in this case by PBGC, Hicks states that the white male employee she replaced at OCC, Alan Huff, was paid at the GS-11 level.  Hicks Decl. at 8.  Because neither Hicks's complaint nor her memorandum opposing summary judgment, however, make any mention of Huff, and because the only evidence regarding Huff in this litigation was introduced by PBGC,  the Court

Therefore, Hicks's contentions regarding irregular procedures do not defend her against summary judgment in favor of the PBGC.

In sum, PBGC has provided two facially permissible reasons for its non-promotion decision:  performance deficiencies during Hicks's time in the EEO office, and insufficient opportunity to observe Hicks's performance during her time in OCC.  With respect to her performance deficiencies in the EEO office, Hicks has rebutted PBGC's evidence that she was at fault in the processing of the invoices.  She has failed, however, to demonstrate that PBGC's other proffered reasons were not the true reasons for her non-promotion.  With respect to the insufficient opportunity to observe Hicks's performance in the OCC, Hicks has not provided any rebuttal evidence at all.  As such, Hicks has failed to create a triable issue as to whether either of PBGC's proffered explanations were pretext.  The Court will therefore grant PBGC's motion for summary judgment with respect to Hicks's non-promotion claim.

**B.      Summary Judgment for Defendants is Appropriate as to Hicks's Workers' Compensation Claims**

Hicks contends that PBGC discriminated against her in processing her workers' compensation claim because the agency acted too slowly.  PBGC argues that no discrimination occurred and that, in fact, the agency processed Hicks's claim faster than those of other similarly

---

assumes that Hicks does not rely on evidence regarding Huff in this case.  Moreover, even if the Court were to consider Hicks's argument regarding Huff that she made at the EEOC level, PBGC has offered evidence that suggests Huff's GS-11 status does not lead to an inference of discrimination because Huff was not similarly situated to Hicks.  PBGC argues that Hicks and Huff performed different tasks, under different position descriptions, and with differing job responsibilities and titles.  Hicks has not rebutted this evidence.

situated employees.  The Court agrees with PBGC.[11]

PBGC demonstrates that it spent less time processing Hicks's claim than it spent processing the claims of employees who are not members of Hicks's protected groups. According to a chart submitted by PBGC, there are two possible measures for the amount of time PBGC takes to  process workers' compensation claims: the date of the first agency action, and the date the compensation claim was submitted to the Department of Labor.  *See* Def.'s Ex. 14 at 2.  According to the data submitted by PBGC, Hicks's claim was first processed after 22 days, and it took a total of 120 days before the claim was submitted to the Department of Labor.  *See id.*  Undercutting Hicks's suggestion of discrimination, PBGC took 26 days to initially process a white man's claim, and then did not submit the claim to the Department of Labor until 188 days after he filed his form.  *See id.*  In addition, although the claim of an individual under the age of 40 was initially processed after four days, it was only submitted to the Department of Labor after 136 days had passed since the claim was first filed.  *Id.*[12]  This evidence suggests that the time involved in processing Hicks's workers' compensation claim was not influenced by Hicks's race, sex, or age.  Hicks has not proffered any evidence suggesting she experienced a longer delay than individuals of different ages, races, and sexes.

---

[11]      PBGC also contends that any complaint about the processing of the workers' compensation claim is not actionable because no adverse employment action occurred.  The Court does not address this issue because the Court has concluded above that Hicks's workers' compensation claim must fail due to lack of evidence of discrimination and because PBGC raised this argument for the first time in its reply brief.  *See Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) ("[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief.").

[12]      This latter calculation is made assuming that the letters "DOB" on PBGC's chart regarding processing time of workers' compensation claims refers to a claimant's date of birth. Def.'s Mot., Ex. 14 at 2.

Hicks has not rebutted the PBGC's evidence.  In her opposition to summary judgment, she cites an email describing the customer service record of the PBGC representative involved in processing Hicks's claim as "unparalleled."  Pl.'s Opp'n, Ex. 8 at 1 (email from Ruben Moreno to Ricardo Silva and other recipients, Jan. 16, 2008).  Hicks presumably proffers this email to suggest that the representative normally performed well, but that, with respect to Hicks, her service was lacking.  This evidence does not rebut the facts that PBGC adduces in support of its contention that Hicks was not disparately treated with respect to processing time.[13]  Thus, because Hicks has failed to counter PBGC's argument and to present facts from which a reasonable jury could find that PBGC discriminated against Hicks when it processed her worker's compensation filing, summary judgment in favor of the defendants is proper as to this discrimination claim .

**C.**     **Hicks's Has Failed to Present Evidence from Which a Reasonable Jury Could Find that Suffered From an Impermissibly Hostile Work Environment**

The basis for Hicks's hostile work environment claim is difficult to discern.  Her complaint merely states that she experienced a hostile work environment and does not identify specific evidence that supports this claim.  *See* Am. Compl ¶ 44.  Her opposition brief, meanwhile, does not address the issue of hostile work environment at all.  Giving Hicks the benefit of the doubt, the Court reads her complaint to indicate that all of the activity about which she complains forms the basis of her hostile work environment claim.  As a whole, her complaint

---

[13]     Hicks's declaration that appears to have been submitted in connection with her EEOC complaint, and that was filed in this case by PBGC, indicates that Hicks was upset that PBGC took nearly a month to give her the forms necessary to file a workers' compensation claim.  Hicks Decl. at 6.  Even assuming the existence of this delay, Hicks has not submitted any evidence that the lag was related to her protected status.

focuses on three events: PBGC's failure to promote her, its delay in submitting her workers' compensation claim, and the meeting with Bledsoe in which Hicks contends she was blocked from leaving Bledsoe's office.  PBGC maintains that none of these acts suggest any causal connection with Hicks's protected status.  The Court agrees.

"Not all things that make an employee unhappy create a hostile work environment." *Graham v. Holder*, 657 F. Supp. 2d 210, 216 (D.D.C. 2009).  Rather, a hostile work environment is actionable "when workplace conditions are so suffused with discriminatory intimidation, ridicule and insult of such severity or pervasiveness as to alter the conditions of the victim's employment." *Hussain v. Principi*, 344 F. Supp. 2d 86, 107 (D.D.C. 2004) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)) (internal quotation marks and alterations omitted). In addition, a plaintiff must offer evidence of a causal connection between her protected status and the harassment.  *Na'im v. Clinton*, 626 F. Supp. 2d 63, 77 (D.D.C. 2009).  Such a showing is necessary because the anti-discrimination statutes do not "prohibit all forms of workplace harassment, only those directed at discrimination" based on protected status.  *Lee v. Winter*, 439 F. Supp. 2d 82, 85–86 (D.D.C. 2006).

Hicks describes a meeting with Bledsoe in which Bledsoe refused to allow Hicks to have a witness present and prevented Hicks from leaving the room.  Pl.'s Opp'n, Ex. 1.  If true, such an occurrence would certainly be unwelcome and threatening.  PBGC correctly observes, however, that there is no evidence of derogatory remarks, intimidation, ridicule or insult based upon race, sex, or age.  Indeed, there is no evidence that this incident was at all connected to Hicks's status as an African American, a woman, or an individual over the age of 40.  In addition, for the reasons described earlier in this opinion, there is no evidence that Hicks's non-

18

promotion to GS-11 or the processing of her workers' compensation claim was related in any

way to her race, sex, or age.  Because "it must be clear that the hostile work environment was the

result of discrimination based on a protected status," Hicks's hostile work environment claim

must fail.  *Smith v. Jackson*, 539 F. Supp. 2d 116, 139 (D.D.C. 2008) (quoting *Singh v. U.S.

House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004) (internal quotation marks

omitted).

Even if Hicks had provided evidence of a causal connection between these events and her

protected status, she still has not demonstrated that the events at issue amount to an actionable

hostile work environment claim.  PBGC is correct to characterize the meeting between Hicks and

Bledsoe as an "isolated event."  Def.'s Mem. at 12.  Indeed, there is no evidence in the record of

any other workplace disturbances—either physical or verbal in nature.  The other events about

which Hicks complains—her non-promotion and the processing of her workers' compensation

claim—are the same events Hicks relies upon to support her disparate treatment claim.  Hicks

cannot "bootstrap discriminatory claims into a hostile work environment claim."  *Nurriddin v.

Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005).  That is because "'[d]iscrete acts constituting

discrimination or retaliation claims . . . are different in kind from a hostile work environment

claim that must be based on severe and pervasive discriminatory intimidation or insult.'"  *Id.* at

108–09 (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003).

Moreover, viewed as a whole, the facts Hicks has put forward do not rise to the level of a

hostile work environment, either in terms of severity or in terms of pervasiveness.  *See Holmes-

Martin v. Sebelius*, 693 F. Supp. 2d 141, 164 (D.D.C. 2010) ("[T]o determine whether a hostile

work environment exists, the court looks to the totality of the circumstances.").  Hicks has not

19

demonstrated that her work environment was permeated with discrimination.  Thus, a reasonable

juror could not find a impermissible hostile world environment.  For these reasons, summary

judgment in favor of the defendant is appropriate with respect to Hicks's hostile work

environment claim.

**D.     Hicks's Retaliation Claim Must Fail**

Employers are forbidden "from discriminating against an employee or job applicant

because that individual opposed any practice made unlawful by Title VII or made a charge,

testified, assisted, or participated in a Title VII proceeding or investigation." *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (describing Title VII's retaliation provision)

(internal alterations and quotation marks omitted).  The same ban on retaliation applies under the

ADEA.  *Gomez-Perez v. Potter*, 553 U.S. 474 (2008).  Hicks contends that PBGC's

discrimination against her and its hostile work environment constitute retaliation.  Specifically,

she alleges that Bledsoe denied Hicks promotions and "further created a hostile work

environment." in retaliation for Hicks' filing of a grievance against Bledsoe. Am. Compl. ¶ 44.

This claim cannot survive because the Court has already concluded that PBGC is entitled to

summary judgment on both Hicks's discrimination and hostile work environment claims.  *See*

*Hussain v. Gutierrez*,  593 F. Supp. 2d 1, 11 (D.D.C. 2008) (dismissing retaliation claim that

alleged defendants retaliated against plaintiff by creating a hostile work environment and

terminating her contract because the court had already concluded that plaintiff had failed to

present evidence upon which a reasonable jury could find that she was subjected to a hostile

work environment or illegal discrimination).[14]

### III. CONCLUSION

For the foregoing reasons, PBGC's motion for summary judgment must be granted as to all of Hicks's claims.  An appropriate order accompanies this memorandum opinion.


Signed on December 12, 2011 by Chief Judge Royce C. Lamberth.

---

[14]     PBGC also argues that Hicks's retaliation claim must fail because she did not properly exhaust this claim.  Because the Court concludes that Hicks's retaliation claim fails on the merits, the Court does not address PBGC's exhaustion argument.